* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and defendant-employer.
3. The Travelers is the carrier on the risk.
5. Plaintiff's average weekly wage was $580.79, yielding a compensation rate of $387.21 per week.
6. The date of the injury by accident was February 5, 2001.
7. Defendants accepted plaintiff's injury as compensable and paid temporary total disability for all periods of missed work until plaintiff's termination on January 6, 2003.
8. The parties stipulated the following into evidence:
• Stipulation No. 1 — plaintiff's medical records;
 • Stipulation No. 2 — Industrial Commission forms; and
• Stipulation No. 3 — plaintiff's personnel records.
9. The depositions of Dr. Scott Lurie, Dr. Robert Blake, Dr. James Hartness and Dr. John A. Welshofer were taken and have been received into the record.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 36 years old at the time of the Deputy Commissioner's hearing and was born September 2, 1968. Plaintiff was hired by defendant-employer on September 29, 1997, and worked as a machine operator until August 2002, when he was transferred to a light duty position that he performed until his termination.
2. On February 5, 2001, plaintiff sustained a compensable injury by accident when he started to flip a metal angle over with a metal "flip" bar that broke and caused plaintiff's upper body to lunge forward. Plaintiff caught himself with both hands but experienced instant pain in his mid to low back. Plaintiff was initially seen by Dr. Lee Beatty at East Gaston Family Physicians on February 14, 2001, and was taken out of work. On February 16, 2001, Dr. Beatty noted that plaintiff's back was slowly improving and he could return to work on February 22, 2001.
3. Plaintiff was not treated again until November 5, 2001, when he was seen by Dr. Richard Snyder at Riverbend Chiropractic. Plaintiff complained of neck and lower back pain that was getting progressively worse. Dr. Snyder treated plaintiff through November 14, 2001.
4. On March 27, 2002, plaintiff returned to Dr. Beatty and complained of increased pain. Dr. Beatty wrote plaintiff out of work until April 1, 2002.
5. On June 6, 2002, plaintiff returned to see Dr. Snyder for increased low back and neck pain. Dr. Snyder treated plaintiff until July 15, 2002 and wrote him out of work.
6. On July 16, 2002, plaintiff presented to Dr. John Welshofer, a board-certified physical medicine and rehabilitation doctor, at the request of defendants' workers' compensation carrier. Dr. Welshofer noted plaintiff had continuous low back pain and he requested an MRI and placed plaintiff on light duty work restrictions. The MRI revealed annular tears at L4-5 and L5-S1 with central disc protrusion at L4-5 and L5-S1 and a right foraminal tear at L3-4 effacing the L3 nerve root. Dr. Welshofer noted that plaintiff had been placed in a different job that was making his pain more tolerable but that he still had consistent back pain. Dr. Welshofer did not recommend surgery but thought plaintiff needed a functional capacity evaluation to determine permanent work restrictions and referred plaintiff for epidural injections.
7. On August 26, 2002, plaintiff was seen by Dr. Brian Wilder at Southeast Pain Care. Plaintiff complained of continuous low back pain since January 2001. Dr. Wilder diagnosed degenerative disc disease with lumbar radiculopathy and myofascial pain, and gave plaintiff a lumbar epidural steroid injection. He returned plaintiff to work on August 28, 2002. On September 20, 2002, plaintiff had a second epidural steroid injection, and Dr. Wilder wrote plaintiff out of work again until September 21, 2002.
8. On September 24, 2002, plaintiff returned to Dr. Welshofer, who released plaintiff from his care with a one percent permanent functional impairment to his back and noted that plaintiff had returned to work as a CNC saw operator and was doing better. Plaintiff's restrictions were in the 20-pound range with position changes as necessary.
9. On January 6, 2003, plaintiff was terminated for excessive absenteeism and inability to perform job duties. Plaintiff has not worked since January 6, 2003.
10. Plaintiff did not return to a physician for his back until June 10, 2003, when he received a second opinion on his rating from Dr. Robert Blake, a board-certified orthopaedic surgeon. Plaintiff complained of severe pain and Dr. Blake felt that plaintiff's February 5, 2001 compensable injury had aggravated a pre-existing multi-level degenerative disc disease. Dr. Blake assigned plaintiff a permanent partial disability rating of five percent to the back.
11. Dr. Blake testified that plaintiff's injury on February 5, 2001 could have caused the annular tears that were revealed on the MRI, as well as the nerve effacement at L4-5 and the aggravation of his underlying degenerative disc disease and facet arthropathy. Dr. Blake restricted plaintiff to sedentary work that was lifting less than five pounds and to alternate between sitting and standing. Dr. Blake stated that plaintiff's overall impairment would likely be more because of the nature of his back condition, but he only assigned five percent impairment attributable to the February 5, 2001 compensable injury. Dr. Blake felt plaintiff was at maximum medical improvement, but that he still may need further treatment, including a pain center or epidural injections.
12. Plaintiff returned to Dr. Welshofer on November 25, 2003 and complained that his back pain had increased. Dr. Welshofer recommended an MRI and electrodiagnostic testing.
13. On March 26, 2004, plaintiff underwent an MRI which revealed a small right far lateral disc protrusion with associated annular hypersensitivity at L4-5, not significantly changed when compared to the prior study. The small posterior central disc protrusion at L4-5 was no longer identified.
14. Dr. Welshofer was of the opinion that the August 13, 2002 MRI findings explained the back pain plaintiff was having. Plaintiff had four levels of degeneration and two levels of annular tears. Dr. Welshofer explained that the degeneration would not improve and would only get worse with time, and that the tears may heal but are prone to recur. Dr. Welshofer testified that the annular tears, nerve effacement and the general disc disease of the lumbar spine could all cause pain. He stated that the relief plaintiff experienced from the epidural steroid injections indicated that inflammation was the predominant cause of plaintiff's symptoms. Dr. Welshofer further testified that plaintiff also had underlying multi-level degenerative disc problems for which there was no cure. Dr. Welshofer stated that while epidurals may provide a temporary cure, in many patients like plaintiff, back conditions revealed at MRI will be permanent problems and will produce intermittent symptoms throughout the patient's life.
15. Dr. Welshofer assigned permanent light duty restrictions for plaintiff in the light-medium range, which included lifting, carrying, pushing, pulling not greater than 20 pounds, and occasional bending and working at a job that would allow him to change positions with no prolonged sitting or standing. At his deposition, Dr. Welshofer recommended that plaintiff have an MRI and nerve testing. Dr. Welshoffer explained that if the MRI and nerve testing revealed no nerve injury, he would offer plaintiff a repeat of epidurals, place him on sedentary work restrictions, and possibly request a functional capacity evaluation (FCE).
16. Prior to his back injury, in 1998 and 1999, Dr. Scott Lurie, a psychiatrist at Eastover Psychiatric, treated plaintiff for psychological problems. Plaintiff suffered from depression, which was in remission by September 1999. Plaintiff continued to be free of depression until January 13, 2000, when he had a recurrent depressive episode. Dr. Lurie prescribed Effexor and plaintiff appeared to improve by March 27, 2000.
17. Plaintiff's depression remained in remission until December 17, 2002, when plaintiff presented to Dr. Lurie with severe depression. Plaintiff felt his depression was related to chronic back pain, marital problems, and stress from his daughter moving home. Plaintiff also indicated to Dr. Lurie that he was worried about being fired from his job, and gave a history of a panic attack at work in December 2002.
18. Plaintiff returned to Dr. Lurie on January 8 and 10, 2003, and reported suicidal ideations and that he had been terminated from work. Plaintiff did not return to Dr. Lurie after that date due to financial difficulties.
19. In his deposition, Dr. Lurie agreed that chronic pain could make depression worse and harder to treat. However, Dr. Lurie stated that he was unable to give a reasonable opinion whether or not plaintiff's depression was exacerbated by his back injury or was caused by the typical waxing and waning of depression. Dr. Lurie also testified that he was unaware of the level of plaintiff's back pain since he did not treat plaintiff during the time Dr. Welshofer treated plaintiff.
20. On October 28, 2003, plaintiff was seen by Dr. James Hartness, who has undergraduate degrees in psychology and human development and a doctorate in counseling, and is a Licensed Professional Counselor. Plaintiff informed Dr. Hartness that he was treated by Dr. Lurie for approximately three years for depression, but that with increased pain and inability to work stemming from his February 5, 2001 injury, he felt his depression was accelerating. Dr. Hartness saw plaintiff on a consistent basis from October 28, 2003 through July 12, 2004, the date of Dr. Hartness' deposition. During that time, plaintiff complained of severe pain, depression, hopelessness, worthlessness and feeling overwhelmed. Dr. Hartness stated that plaintiff cried during every session.
21. Dr. Hartness testified and the Commission finds that plaintiff is unable to return to work in any capacity based on his chronic back pain and severe depression. Dr. Hartness also stated that plaintiff's back pain and its affect on his ability to perform activities significantly contributed to an increase in plaintiff's anxiety and depression. Dr. Hartness testified that plaintiff's back pain was the major contributing factor of his depressive episode and that plaintiff's "increased depression, hopelessness and suicidal ideation was directly related to the job injury and the pain."
22. The Full Commission give greater weight to the testimony of Dr. Welshofer, Dr. Hartness, and Dr. Blake than to Dr. Lurie, who was unable to render an opinion on whether plaintiff's depression was aggravated by his back injury.
23. The greater weight of the medical evidence shows and the Full Commission finds that plaintiff has not reached maximum medical improvement.
24. The Full Commission finds that plaintiff's physical and psychological conditions are the result of a combination of physical pain, which was caused by his compensable injury, and psychological overlay, which was aggravated by the injury and resulting pain.
25. As the result of the compensable injury by accident, chronic pain and depression, plaintiff has been unable to earn wages in any employment since January 6, 2003.
26. Plaintiff received unemployment benefits of $347.00 per week beginning January 10, 2003 and continuing for approximately 50 weeks.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On February 5, 2001, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's compensable injury by accident, plaintiff sustained annular tears and nerve effacement to his back and aggravated his underlying degenerative disc disease and facet arothropy. Plaintiff's depression and anxiety were also accelerated and aggravated as a result of the compensable injury. N.C. Gen. Stat. § 97-2(6).
3. In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. PerdueFarms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demeryv. Perdue Farms, Inc., supra.
4. In the instant case, plaintiff met his burden to show by competent medical evidence that he is physically and mentally, due to his compensable injury, incapable of work in any employment. As a result of plaintiff's injury by accident, plaintiff is disabled and has been unable to earn wages with defendant-employer or any other employer from January 6, 2003 and continuing. Russell v. Lowes Product Distribution, supra.
Plaintiff is entitled to temporary total disability compensation from January 6, 2003 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to medical treatment for his compensable injuries including his back pain, depression and anxiety. Such medical care includes but is not limited to treatment recommended by Dr. Welshofer at a pain management facility, treatment by Dr. Lurie and treatment by Dr. Hartness. N.C. Gen. Stat. § 97-2(19); 97-25.
6. Defendants are entitled to a credit for any unemployment compensation paid plaintiff. N.C. Gen. Stat. § 97-42.1.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fees approved below, defendants shall pay temporary total disability benefits at the rate of $387.21 per week from January 6, 2003, and continuing until further Order of the Commission. Any amount having accrued shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred that are related to plaintiff's chronic back pain and depression and anxiety, including but not limited to treatment recommended by Dr. Welshofer at a pain management facility, treatment by Dr. Lurie and treatment by Dr. Hartness.
3. A reasonable attorney's fee in the amount of 25% of the compensation benefits due under paragraph 1 of this Award is approved for plaintiff's counsel. Any amount having accrued shall be paid in a lump sum. Plaintiff's attorney shall receive every fourth check of plaintiff's future temporary total disability compensation.
4. Defendants are entitled to a credit for any unemployment compensation paid plaintiff.
5. Defendants shall pay all costs, including expert witness fees in the amount of $400.00 to Dr. Blake, and $350.00 to Dr. Welshofer, if not paid by prior order.
This 28th day of November 2005.
 S/________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________________ DIANNE C. SELLERS COMMISSIONER